OPINION OF THE COURT
Anthony J. Ferraro, J.
Defendant moves to dismiss the complaint upon the ground that it fails to state a cause of action.
Defendant improperly seeks a judgment dismissing the complaint. Such relief is only available pursuant to CPLR 3212 after issue has been joined. In the instant case defendant has not yet interposed its answer and the only relief available is an order dismissing the complaint pursuant to CPLR 3211.
The action is for a judgment declaring that the current “frontage tax”, imposed by the City of Yonkers pursuant to section C 12-9 of its charter, is in fact a real property tax pursuant to subdivision 20 of section 102 of the Real *462 Property' Tax Law from which plaintiffs and those similarly situated, as not-for-profit religious and charitable institutions, are exempt under section 421 of the Real Property Tax Law.
Defendant City of Yonkers contends that the “frontage tax” is a special assessment from which the plaintiffs are not exempt and that the Appellate Division, Second Department, has so held in the case of New York Cardiac Center v Kondzielaski (84 AD2d 746).
The issue, then, is whether the “frontage tax” is a real property tax from which plaintiffs would be exempt or a special assessment to which they would be subject. More specifically, the issue in this action for a declaratory judgment, is, are the plaintiffs entitled to a new declaration at this time based upon changed facts and circumstances or are they bound, as a matter of law, by the declaration previously made by the Appellate Division.
The rule is fundamental that upon á motion to dismiss the complaint pursuant to CPLR 3211 all the allegations must be deemed to be true and plaintiff is entitled to the benefit of all favorable inferences which may be drawn therefrom. (Underpinning & Foundation Constructors v Chase Manhattan Bank, 46 NY2d 459.) The complaint alleges in substance that the plaintiffs are tax-exempt religious and charitable organizations owning property within the City of Yonkers; that the City of Yonkers has enacted a local law providing for the collection of water rents from owners of real property located within the city at rates established by the city council; that in addition to the water rents the local law provides for the payment of a frontage tax in a specified amount “per effective rent feet” to “be charged to all real property facing a street in which a water main is or will hereafter be laid” (Charter of City of Yonkers, § C 12-9); that the frontage tax imposed by the Yonkers City Charter is a realty tax pursuant to subdivision 20 of section 102 of the Real Property Tax Law and that the property of plaintiffs is exempt from such real property taxes pursuant to title 2 of article 4 of the Real Property Tax Law. The second cause of action repeats the aforesaid allegations and proceeds to allege that despite the exemption of plaintiffs’ property from taxation, the *463 City of Yonkers continues to levy and/or charge them a “frontage tax” and that the imposition of the tax is illegal and in excess of the authority of the city officials. Plaintiffs thereupon seek a judgment (1) declaring that the “frontage tax” is a realty tax from which they are exempt and awarding them a refund of all frontage taxes paid; (2) an injunction against any future imposition, levy or collection of a frontage tax; and (3) reasonable attorney’s fees.
A special assessment is defined by subdivision 15 of section 102 of the Real Property Tax Law as: “a charge imposed upon benefited real property in proportion to the benefit received by such property to defray the cost, including operation and maintenance, of a special district improvement or service or of a special improvement or service, but does not include a special ad valorem levy.”
In order to qualify as a special assessment the charge must be proportionate to the benefit received by the property charged and must be necessary to defray the cost of operation and maintenance of the special improvement or service. The distinction is clear between taxes which are levied to raise funds for general public purposes and assessments which are imposed for specific municipal improvements. The former is levied upon all property within the municipality, is based upon a general benefit to the entire community and is considered a tax. (Matter of Knickerbocker Vil. v Reid, 256 App Div 973, affd 281 NY 861; State Univ. of N. Y. v Patterson, 42 AD2d 328.) The latter is based upon a particular benefit to a specific area, is levied to finance improvements which are especially béneficial to that particular area beyond the benefits conferred by general taxation and is considered equivalent compensation for enhanced value derived from the improvement. (Matter of Hun, 144 NY 472, 477; Roosevelt Hosp. v Mayor, Aldermen & Commonalty of City of N. Y., 84 NY 108, 111-112; Matter of O’Hara v Board of Supervisors of Suffolk County, 42 Misc 2d 716, affd 44 Misc 2d 572, affd 24 AD2d 843.)
Examples of the clear distinction drawn by the courts are found in many reported cases.
In the case of Cooper Union for Advancement of Science & Art v City of New York (272 App Div 438, affd 298 NY *464 578) the court held that levies for public improvements imposed on a city-wide or borough-wide basis were taxes and not special assessments.
In Matter of New York Tel. Co. v Common Council of City of Rye (43 Misc 2d 668, 670) the court held that a sewer tax levied on all property in the City of Rye was a tax and not an assessment.
In Rector, Churchwardens & Vestrymen of Christ Church, Bronxville v Town of Eastchester (197 Misc 943, 949) the court held that a levy for each police, water, lighting and garbage district was a levy to provide governmental services and was therefore a tax.
In applying the first test of a special assessment it does not appear in the case at bar that the charge is proportionate to the benefit received by the property to be charged. Rather it is a city-wide levy imposed for general public benefit not limited to a particular group or area.
In applying the second test of a special assessment the charge is not necessary to defray either the cost or the maintenance of the water system for it appears that water rents have been and will be more than adequate to cover the cost and operation of the water system and that the three million plus dollars collected from the frontage tax for the fiscal year 1981 to 1982 was paid into the general fund and used for general municipal purposes. With the increase of the frontage tax from $1 to $3.95 per foot a projected eleven million plus dollars will be thrown into the general fund for general municipal purposes for the ensuing year. So that, not only is the frontage tax disproportionate to the necessary cost of operation and maintenance, but the disproportion becomes even greater with each increase in tax and further dissipates any ratio of relevancy between tax and benefit. The frontage tax has obviously become a general revenue raising measure in no way related to the cost or operation of the water system.
Section 94 of the General Municipal Law authorizes a municipal corporation to earn a fair return on the operation of a public utility service and to use such return for municipal purposes. However, such section can by no stretch of its language be interpreted to authorize or sanction the levy, collection and payment of eleven plus million *465 dollars into the general fund under the guise of a fair return on operation of the water system. This is pointedly true if, as alleged, the water rents are independently sufficient to pay all costs and expense and are already yielding a fair return for the general fund.
The defendant, City of Yonkers, relies heavily upon the determination of the Appellate Division, Second Department, in the case of New York Cardiac Center v Kondzielaski (84 AD2d 746, supra). This reliance is misplaced. In the New York Cardiac case the complaint sought a declaration that the frontage tax was a service charge and that the plaintiff as a charitable organization was exempt therefrom. The Appellate Division recognized that the sole issue before Special Term, as posed by plaintiffs’ motion for summary judgment, was the interpretation and application of sections 420 and 498 of the Real Property Tax Law with regard to the frontage tax. Section 420 of the Real Property Tax Law maintains the exemption from service charges for religious, charitable and other specified organizations. Section 498 of the Real Property Tax Law established the method of computing service charges. The Appellate Division sagaciously concluded that the frontage tax could not be classified as a service charge because it was not computed according to the method established by section 498 of the Real Property Tax Law. Albeit the court went on to state that it was a special assessment but the issue of whether it was a special assessment or realty tax was not before the court. Furthermore, at the time of the decision the frontage tax was 50 cents per effective front foot, a sum which could well have brought the levy within the definition of a special assessment because it may have been necessary to defray the cost of the construction and maintenance of the water system and the charge may have been proportionate to the benefit. This is not the situation today. The issues before this court are entirely different based upon a substantial change in the facts. The increase of the frontage tax rate from 50 cents to $3.95 per effective foot with no corresponding need for additional revenue to operate the water system and no corresponding additional benefit to the property owner; the introduction of the water meter collections which have proven sufficient to defray all *466 necessary costs and yield a profit and the tossing of the lump-sum the fixing of which is geared to the financial needs of the community, into the general fundvhave divested the levy of every last vestige of a special assessment and cast it into the clear realm of a general tax. What may once have been a special assessment has now developed into a monstrous tax.
The declaration by the Appellate Division in the New York Cardiac case (supra) was not cast in stone for time immemorial. It was not intended as a pronouncement for all time regardless of subsequent change in circumstances. The law must be ever flexible to yield to changes in time, exigencies of situation and differences of fact. The declaration by the court did not insulate the City of Yonkers against all future challenges to their taxing conduct nor give it carte blanche to tax at random under the label of “frontage tax.”
Not only does the present complaint state a cause of action for a declaratory judgment but the present situation cries out for a new declaration from the court at this time.
In the instant case the so-called “frontage tax” could nullify the benefit of tax exemption and deal a devastating blow to already tottering entities of eleemosynary endeavor. Courts must be ever vigilant and ready to knock down insidious inroads upon the religious, moral and intellectual development of society. For such development is indeed essential to the advancement of civilization. As stated by the court in the early case of People ex rel. Seminary of Our Lady of Angels v Barber (42 Hun 27, 30, affd 106 NY 669): “The policy of the law has been, in this State from an early day, to encourage, foster and protect corporate institutions of religious and literary character, because the religious, moral and intellectual culture afforded by them were deemed, as they are in fact, beneficial to the public, necessary to the advancement of civilization, and the promotion of the welfare of society. And, therefore, those institutions have been relieved from the burden of taxation by statutory exemption.”
In the case of Williams Institutional Colored M.E. Church v City of New York (275 App Div 311, 313), it was held that the basis for tax exemption in New York is the *467 performance of “services which by the settled public policy of the State * * * are of such importance as to require or justify exemption”.
As stated in Matter of Diocese of Rochester v Planning Bd. of Town of Brighton (1 NY2d 508, 524-525): “Thus the paramount authority of this State has declared a policy that churches and schools are more important than local taxes, and that it is in furtherance of the general welfare to exclude such institutions from taxation.”
And the court held in People ex rel. Watchtower Bible & Tract Soc. v Haring (8 NY2d 350) that the tax exemption has as its settled purpose to encourage, foster and protect religious and educational institutions — a high and traditional purpose.
The so-called frontage tax is an affront to declared public policy, established legal principles, and constitutionally protected institutions. (See NY Const, art XVI, § 1; Real Property Tax Law, § 421.)
The City of Yonkers is in effect delivering a certificate of exemption through the front door and slipping a sizeable tax bill under the back door.
Assuming the truth of the allegations of the complaint and giving every favorable inference thereto the court concludes that the plaintiffs are entitled to present evidentiary proof of the facts alleged therein as elaborated upon this application and to obtain a declaratory judgment thereon rather than be ruled out of court as a matter of law.
Under the balance of power secured by constitutional enactment it is incumbent upon the courts to come to the rescue of charitable institutions which could otherwise unwittingly become unsuspecting victims of legislative oppression.
The motion to dismiss thp complaint is denied.