OPINION OF THE COURT
Donald N. Silverman, J.
The instant matter was originally commenced pursuant to CPLR article 78. It seeks various forms of relief including mandamus to review, mandamus to compel, and prohibition. Specifically, petitioner originally sought to: (1) annul and cancel an interim decision of respondent Thomas Jorling rendered on November 22, 1994, which held, in part, that the Department of Environmental Conservation (DEC) lacked administrative authority to address (a) the imposition as of July 1, 1992 of increased water rate(s) charged to petitioner by *4 the New York City Water Board (the Board), (b) the issue of excess water consumption including the method of calculating the amounts of both entitlement and excess water, and (c) the resolution of disputes over the rate for excess water charged by the Board; (2) declare the higher rates imposed by the Board as of July 1, 1992 to be unlawful; (3) direct the DEC to address and resolve the issues of excess per capita water consumption under the authority of Administrative Code of the City of New York § 24-360, also known as the Water Supply Act of 1905 (the Act); and (4) as an alternative, a declaration granting the same relief in the event the DEC is without jurisdiction.
This court, in its prior decision-judgment of January 31, 1995, elected to treat this matter as an action for declaratory judgment. The instant decision-judgment accordingly treats this application as one for declaratory judgment.
By decision-order of May 4, 1995 this court permitted the County of Westchester to intervene as a petitioner-intervenor. The petition of Westchester sought the same declaratory relief to the extent that it sought to have the rate increase for entitlement water declared unlawful. Although the original motion to intervene was unopposed, respondents seek to dismiss this claim for failing to state a cause of action under CPLR 7803 and as untimely. With respect to the sufficiency of the claim, the court finds that petitioner-intervenor has set forth a prima facie claim for declaratory relief.
With respect to timeliness, the claims of both petitioner and petitioner-intervenor have been challenged as barred under CPLR 217’s four-month period of limitation. Respondents argue that the measuring date is July 1, 1992 when the rate increase was imposed. This argument must fail for the following reasons. First, the controlling date is typically that of a final and binding decision. Here, the issue of rate increase is open to administrative review. The November 22, 1993 interim decision was the first administrative statement to expressly disclaim authority over the issues now before the court and was further clarified by the December 14, 1994 second interim decision. Hence, the Scarsdale petition, at least, is timely since it was brought within four months of the first interim decision. Second, both petitions are timely because of the nature of the claims. Respondent Board is alleged to be acting beyond the scope of its authority. Under CPLR 7803 (2) this is referred to as a writ of prohibition. The alleged wrong is continuing (see, Matter of Forte v Supreme Ct., 48 NY2d 179, 183 [1979]). Hence, the petition is timely since the wrong it challenges is continuing.
*5 BACKGROUND
Petitioner, Scarsdale, is a community located along the supply routes of the reservoir systems (Croton and Catskill/ Delaware) providing water to the City of New York. It has a right to connect with the systems (see, Administrative Code § 24-360 [a]). However, a consumer, such as petitioner, is obligated to pay to the City, "such fair and reasonable water charges or rates as may be agreed upon between the commissioner of environmental protection [of the City] and the authorities of such municipal corporations or water districts” (Administrative Code § 24-360 [b]). Absent agreement, the DEC is empowered to resolve disputes (ibid).
The Act refers to water which the upstate municipalities are entitled (see, Administrative Code § 24-360 [a], [e]). Water taken by the upstate municipalities in excess of the entitlement amount is not addressed in the Act.
Respondent Board alleges that the method of allocation previously relied upon, which has existed since at least 1905 under the provisions of the Act, has resulted in the residents of the City being charged a higher rate than that imposed upon upstate customers. Due to increased upstate demand and the previous practice of upstate communities choosing which reservoir system they would draw from, this situation has reportedly worsened. The Board has predicted an increased cost of supply that will not be proportionally covered by the prior rates charged to upstate communities.
In August 1991, the Board petitioned the DEC "to fix a fair and reasonable rate to be charged for supplying entitlement water to upstate municipalities connected to the reservoir systems supplying water to the City of New York.” The petition was returned without resolution by DEC. In its return cover letter, dated January 28, 1992, DEC explained that the petition did not comply with the applicable procedural requirements of 6 NYCRR part 603, which is predicated upon an inability to reach agreement between the Board and the affected municipality as to the proposed rate. The letter went on to state that responsibility for establishing the rate initially lies with the Board.
By resolution adopted April 2, 1992 and effective July 1, 1992, the Board unilaterally imposed higher rates on the entitlement water supplied to upstate municipalities from both the Croton and Catskill / Delaware reservoir systems. This unified rate for entitlement water from both reservoir systems is *6 approximately $165 per million gallons. Moreover, the Board also imposed a new and substantially higher rate for excess water equal to the current in-City rate ($1,350 per million gallons). It is not clear precisely when the rate for excess water was imposed by the Board, however, the petition alleges it is currently in effect along with the newly imposed rate for entitlement water. These rates were imposed without agreement with petitioner or resolution by the DEC.
Subsequently, the County of Westchester submitted an administrative petition to DEC pursuant to 6 NYCRR part 603. The DEC thereafter scheduled an issues conference on March 30, 1993. Petitioner, the Village of Scarsdale, appeared, filed for and was granted party status, as were several other municipal entities. The record of the issues conference was closed on June 18, 1993 and a written issues ruling delineating the issues to be addressed was issued by an Administrative Law Judge (ALJ) on August 9, 1993. The Village of Scarsdale filed an administrative appeal of the issues ruling with respect to DEC’s excluding from consideration the Board’s unilateral rate increase and the rate charged for "excess” water consumption.
In response to this appeal, an interim decision was rendered and issued by DEC on November 22, 1993 by Commissioner Thomas Jorling. It essentially affirmed the determination of the ALJ in the issues ruling. More specifically, with regard to the rate charged for entitlement water, the Commissioner found: (i) that due to the inability of the City and upstate communities to agree on a rate for entitlement water, the DEC would have to issue a ruling on the proposed rate increase; and (ii) that the legality of the charges for entitlement water for the interim period beginning July 1, 1992 and continuing until a final resolution by DEC was beyond the jurisdiction of the DEC, and therefore not an issue for resolution. Notwithstanding the foregoing, in a decision dated November 9, 1995, the DEC set a rate for entitlement water of $137.73 per million gallons, effective July 1, 1992, and $158.31, effective July 1, 1993.
With respect to the question of the rate to be charged for excess water consumption, the DEC found that there was no authority under the Act (Administrative Code § 24-360) for upstate communities to draw excess water from the reservoir system and that any dispute over the rate to be imposed for excess water was beyond the jurisdiction of the DEC.
The DEC asserts that its authority to resolve disputes involving the amount charged for upstate consumption is limited by *7 the Act to the rate for entitlement water alone. Because the language of the Act only speaks to DEC’s authority over entitlement water and is silent with respect to excess water, DEC maintains that it cannot resolve disputes involving excess water. DEC also asserts that excess water should be considered as a new or additional water supply subject to Environmental Conservation Law article 15 (see, ECL 15-1501). Under the ECL a permit from DEC is required in order "[T]o acquire or take * * * an additional water supply from an existing approved source.” (See, ECL 15-1501 [1] [a].)
The interim decision was challenged by the petitioner by the filing of the instant article 78 special proceeding on or about January 20, 1994. In a decision by this court issued July 5, 1994 the petition was found to be premature, in light of the fact that the interim decision itself remanded the matter for further proceedings including fact-finding hearings. In a second interim decision rendered December 14, 1994 the DEC clarified its prior ruling by stating that the issue of the amount of water upstate communities were entitled to draw from the reservoir system would not be addressed in the fact-finding process. Petitioner thereafter moved to renew or vacate. In a decision rendered January 31, 1995 this court vacated its July 1, 1994 judgment for the limited purpose of restoring petitioner’s claim for declaratory relief, to wit: whether the City (Board) was acting within the scope of its authority by unilaterally increasing the rate charged for water consumed by petitioner.
As noted above this court granted petitioner’s application to restore the single issue of the Board’s authority to unilaterally impose a rate increase. The Board contends that this pertains to entitlement water and that it remains the sole issue before this court. The contention of the Board is in error. First, the prior decision restoring the action for declaratory relief addressed the imposition of rates for water consumed by petitioner. This general reference to rates for water included both entitlement water and excess water. Moreover, in determining the authority of the Board to unilaterally impose a charge for either type of water, it is impossible to ignore the underlying issue of administrative authority.
AUTHORITY OF BOARD TO SET RATES
The Board basis its claim that it has the authority to unilaterally implement rate increases for entitlement water upon a combined reading of the Act (Admininstrative Code *8 § 24-360) and Public Authorities Law § 1045-j. It is argued that while there is an absence of express language in the Act granting such authority to the Board, Public Authorities Law § 1045-j authorizes it to establish fees for the use of the water system in order to pay the costs of administration, repair and capital construction. The language of Public Authorities Law § 1045-j suggests broad powers were intended to be given to the Board. The same section acknowledges, however, that with respect to the supply of water services to communities outside the City of New York, the Board remains subject to the authority of the relevant city or State agencies as provided in the Act (see, Public Authorities Law § 1045-j [9]).
To claim implied authority to unilaterally impose a rate, the Board must show a broad legislative authorization and a reasonable connection between the Act and the purpose of the statute (see, Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979]; Matter of City of New York v State of N. Y. Commn. on Cable Tel., 47 NY2d 89, 92-93 [1979]). Beyond those powers expressly set forth, the exercise of administrative authority must be predicated on legislative intent. Such intent may be discerned where the Legislature has granted the agency sufficiently broadly worded powers so as "to fill in the interstices in the legislative product.” (Matter of Nicholas v Kahn, supra, at 31; see also, Boreali v Axelrod, 71 NY2d 1, 13 [1987]; Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398, 410-411 [1991].) In other words, "[I]n discharging [its] responsibilities, an agency is 'clothed with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication [citations omitted]’.” (Matter of Campagna v Shaffer, 73 NY2d 237, 242 [1989].)
The Act, which codifies an agreement between the City and upstate communities, expresses an intent to have the DEC, a neutral agency, resolve disputes. Here, the Board argues that it should have the right to unilaterally make decisions which affect the rights of both City and upstate residents. This interpretation is in contravention of the spirit of the original agreement between these communities, as reflected in the Act.
The Act states that the imposition of rates or charges by the Board must be conditioned upon an agreement, or resolution by the DEC (see, Administrative Code § 24-360 [b]). In contrast to the claim of broad authority, the Act places very specific limitations on the Board’s authority. The Public Authorities Law cannot be interpreted as overriding any provision of the Act. In fact, Public Authorities Law § 1045-j (9) *9 specifically exempts its applicability to out-of-City consumers, and defers to the mandates of the Act. The court finds that the unilateral imposition of an increased water rate as of July 1, 1992 for entitlement water was beyond either the express or implied authority of the Board and is hereby declared unlawful.
AUTHORITY TO ESTABLISH METHOD OF CALCULATION
The Act is very limited in addressing the issue of methodology. It does provide a per capita formula. It does not impute wide powers to the Board. Indeed, as previously stated, in the event of a rate dispute, it is the DEC which is expressly authorized by the Act to make a final decision.
Moreover, the DEC is the agency to which an upstate municipality must apply for permission to connect to the water supply system, as well as the agency having jurisdiction over the connection site to the exclusion of any other board or agency (see, Administrative Code § 24-360 [d]). Although there is no broad grant of power to DEC either, it is clear that under the Act it has a greater scope of authority than the Board.
A statute should not be construed so as to render it ineffective (McKinney’s Cons Laws of NY, Book 1, Statutes § 144). Here, the purpose of the Act is to provide for non-City users the right to connect to the system subject to fair and reasonable conditions including rates charged for the water to which they are entitled. In order to set a fair and reasonable rate for water, where the parties are in disagreement, it is reasonably necessary that the agency resolving the dispute be able to determine the reasonableness of the methodology in determining the quantity of water consumed. To authorize the DEC to set a rate for water, but not oversee the method of calculation would render their involvement without effect. Based upon the foregoing, it is the finding and decision of this court that the DEC has implied authority under the Act to resolve any dispute as to the method of calculating water use.
RATES FOR EXCESS WATER
With respect to excess water, the issue is whether the Board has the authority to unilaterally impose a rate. Since the Act only addresses entitlement water, authority over excess water must lie elsewhere. The court notes the broad scope of the definition of waters contained in ECL article 15 which also encompasses a permit procedure. Before excess water is used, application must be made to the DEC (ECL 15-1501) and if ap *10 proved. DEC would have jurisdiction over any rate dispute (ECL 15-1521). Accordingly, the court finds that the Board is without authority under the Act to set and impose a rate for excess water. In fact, excess water should not even be distributed without application first being made to DEC.
In accordance with the foregoing decision it is hereby ordered and adjudged:
1. That DEC shall, after hearing all parties interested, (a) fix fair and reasonable rates for entitlement water as of July 1, 1992 (apparently accomplished by the decision dated November 9, 1995); (b) resolve any dispute as to the methods of calculating water usage, beginning July 1, 1992.
2. That petitioner shall, in accordance with ECL 15-1501, obtain a permit for excess water, and DEC shall, in accordance with ECL 15-1521, resolve any dispute with regard to the rates charged for such water. This judgment shall have the effect of including the period beginning July 1, 1992, and the DEC shall accept an application for permit and rule on controversies going back to said date.
3. Following the determinations of the DEC in accordance with this judgment, petitioner shall be credited for overpayments, if any.