■ RUDOLPH W. GIULIANI, as Mayor of the City of New York, et al., Appellants, v ALAN G. HEVESI, as Comptroller of the City of New York, Respondent. NATURAL RESOURCES DEFENSE

Council, Inc., et al., Appellants, v New York City Municipal Water Finance Authority et al., Respondents. [644 NYS2d 265]

These consolidated appeals arise from the proposal of the Mayor, in which he is joined by the City Council, to sell the New York City water system to the New York City Water Board for a purchase price of $2.3 billion, to be financed by bonds issued by the New York City Municipal Water Finance Authority under the aegis of the New York City Municipal Water Finance Authority Act (Public Authorities Law § 1045-a *et seq.*). Approximately $1.3 billion would be used to retire outstanding general obligation bonds, the use of which is not in dispute. The remaining $1 billion would be available for New York City's general fund to be used for operational expenses and for non-water related capital needs. Presently, the Water Board has custody of the water system under a 40-year lease from the City, but it hires the Department of Environmental Protection to operate and maintain the system. The system's operation is financed in the main by the collection of rates, the equivalent of user fees, from persons using the system. Public Authorities Law § 1045-j (1) requires the Water Board to set and, if necessary, to revise rates paid by ratepayers, commensurate with the cost of the system, as well as to satisfy the amounts necessary to service the outstanding debt resulting from bond issues. While the majority of those persons and businesses who use the water system are City residents, many are not, and reside in Westchester County and elsewhere.

The Water Authority is authorized to issue revenue bonds to pay for "water projects" (Public Authorities Law § 1045-i [1], [3]), even when the water system, of which the water project is a part, has been transferred to the Water Board (§ 1045-i [2] [vi]). The statute authorizes the City to sell the water system to the Water Board and the Water Board to purchase (§ 1045-h [1]; § 1045-g [9]). However, the statute does not authorize the Water Authority to issue bonds to finance the purchase of the water system. We reject the claim that the terms "water project" (§ 1045-b [20]) and "water system" (§ 1045-b [21]) may be used interchangeably in this regard. Rather, the statute's definitions clearly distinguish between the terms; its structure indicates that a water project is only a part of the overall water system (*see, e.g.,* § 1045-i [2] [vi], [vii]), and logic compels the

conclusion that a "system" subsumes a "project". Since the proposed financing plan is unauthorized, the Comptroller could lawfully refuse to act under section 1045-*o*, irrespective of his conclusions about the wisdom or lack thereof as to the City's proposed disposition of the funds derived from the sale.

There is a critical distinction between a tax and a rate (*see, Albany Area Bldrs. Assn. v Town of Guilderland*, 141 AD2d 293, 298, *affd* 74 NY2d 372). The power to tax is exclusively legislative (NY Const, art III, § 1; art XVI, § 1; *Greater Poughkeepsie Lib. Dist. v Town of Poughkeepsie*, 81 NY2d 574, 579-580). Water user fees, which are not defined to be taxes, have not withstood constitutional scrutiny when the general revenue uses of the fees were unrelated to the resource being used, so that the ratepayer did not receive the benefit of the fees (*Coconato v Town of Esopus*, 152 AD2d 39, 44, *lv denied* 76 NY2d 701; *Albany Area Bldrs. Assn. v Town of Guilderland, supra*; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees*, 49 AD2d 461). If the proposed sale here were to go through, and if the City's proposed use of some $1 billion in proceeds were to be diverted to the general fund, this would constitute an unconstitutional tax, especially with respect to non-City ratepayers. We reject the City's characterization of these proceeds as only constituting a fair return authorized under the aegis of General Municipal Law § 94; the sheer scale defeats the City's claim (*see, Church of Christ the King v City of Yonkers*, 115 Misc 2d 461), especially since the City already is entitled to a fair return under the existing lease. We also reject the City's characterization that it is acting solely in a proprietary role rather than a governmental role. We therefore conclude that this financing plan is unlawful for this additional reason, which provides further support for the court's denial of injunctive relief against the Comptroller.

With respect to the Natural Resources Defense Council (NRDC) plaintiffs, the court properly dismissed the fifth cause of action, a taxpayer challenge to the bond issue. While we disagree with the court's reasoning in dismissing the first cause of action under State Finance Law § 123-b, which authorizes citizen taxpayer suits, but bars such when the citizen taxpayer challenges a bond issue because plaintiffs proceeded as ratepayers, not taxpayers, the result was correct because this challenge is to the Water Authority's power to issue the revenue bonds, and as to that act, plaintiffs can show no injury in fact.

By contrast, under the second cause of action, wherein the NRDC, which, unlike the Comptroller, enjoys no statutory standing, plaintiffs challenge the $2.3 billion purchase by the

Water Board, of which $1 billion would not be reinvested in the water system, plaintiffs have sufficiently demonstrated a basis for standing as ratepayers and injury in fact arising from the likely future increase in rates in consequence of the increased debt. While the exact increase or the timing thereof cannot presently be calculated with precision, the logic seems inescapable that if the City withdraws $1 billion from the equity of the system, that amount will somehow have to be replaced; this is new debt above and beyond the present debt, and even if payments are stretched out over a term of years, the only result is that decreases resulting from retirement of debt that otherwise might have been available as a component of annual rates would not be available. The mechanism for servicing the new debt, or any debt, would be by setting rates under Public Authorities Law § 1045-j (1), which mandates the Water Board to set rates sufficient to meet debt payments. We find the City's contention that the proposal is revenue neutral to be conclusory and not credible.

NRDC plaintiffs are also entitled to judgment under their fourth cause of action. The proposal presently is invalid under the State Environmental Quality Review Act. First, because the City was committed to a course of action prior to the issuance of the negative declaration in December 1995, whether the decision is gauged by the June 1995 budget, which included a portion of these funds, or by the resolutions of the Water Board and Water Authority, or by the City's commencement of the declaratory judgment action against the Comptroller, the decision is invalid (*Devitt v Heimbach*, 58 NY2d 925; *compare*, *Matter of Har Enters. v Town of Brookhaven*, 74 NY2d 524, 530-531; *see generally*, 1 Gerrard, Ruzow & Weinberg, Environmental Impact Review in New York §§ 1.03, 3.01 [3] [a]). At the least, the Water Board and Water Authority had acted to the limit of their ability to do so at that time when they issued resolutions, rendering those resolutions invalid, and thus precluding enforcement of the transfer agreement (Public Authorities Law § 1045-h [5]).

Second, in issuing its negative declaration, the City failed to take the requisite hard look at areas of environmental concern. We reject the City's claim that there would be no discernible difference in environmental impact regardless of which entity holds title. The different entities have different levels of political accountability, notwithstanding the mayoral (but not City Council) power of appointment to the Water Board. In the event of major capital expenses, such as filtration or sewer or septic projects, it is not so clear that the City's continuing

operational obligation to maintain and repair the system equates with continuing responsibilities for capital additions or replacements. The respective responsibilities and strategies to meet such capital needs would more appropriately be analyzed in an environmental impact statement. Nor is the transfer of title between public entities a mere paper transaction relieving the transferor of the obligation to fully analyze environmental consequences of the transfer (*see, e.g., Anacostia Watershed Socy. v Babbitt*, 871 F Supp 475). Plaintiffs also plausibly claim that the fact of the additional debt may result in the elimination or postponement of necessary water and sewer projects.

While the override authority in Public Authorities Law § 1045-h (1) as it pertains to local referendums is not inconsistent with the Uniform Land Use Review Procedure (NY City Charter § 197-c *et seq.* [ULURP]), insofar as ULURP makes no provision for submitting legislative matters for popular approval, nevertheless, Public Authorities Law § 1045-h (1), authorizing the Mayor, acting alone, to transfer the water system to the Water Board is inconsistent with those provisions of ULURP that provide approval authority to the City Planning Commission and the City Council (NY City Charter § 197-c [h], [j]; § 197-d [c], [e], [f], [g]), under which circumstances the provisions of the Municipal Water Finance Authority Act prevail over local law (Public Authorities Law § 1045-bb).

We have considered the remaining contentions of the parties and find no other basis to modify the judgments under review. Concur—Murphy, P. J., Rosenberger, Rubin and Williams, JJ.