[653 NYS2d 935]

In the Matter of VILLAGE OF SCARSDALE et al., Respondents, v
THOMAS C. JORLING, as Commissioner of the New York
State Department of Environmental Conservation, Respon-
dent, and NEW YORK CITY WATER BOARD, Appellant.

Second Department, January 27, 1997

## APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Pamela Seider Dolgow, Gail Rubin, Florence A. Hutner* and *John Hogrogian* of counsel), for appellant.

*Klein, Zelman, Rothermel & Dichter, L. L. P.,* New York City *(Joel R. Dichter* and *David O. Klein* of counsel), for Village of Scarsdale, respondent.

*Marilyn J. Slaaten, County Attorney* of Westchester County, White Plains *(Stacey Dolgin-Kmetz* and *Marguerite R. Wiess* of counsel), for County of Westchester, respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal involves a dispute between the New York City Water Board (hereinafter the Water Board) on the one hand, and the Village of Scarsdale and the County of Westchester on the other, regarding the quantities of water which several municipalities outside the City of New York are authorized to take from the New York City water supply, as well as the rates to be charged therefor. In resolving the matter, we discuss the procedures to be followed in fixing the water rates and in determining the quantities of water which may be taken.

## I

Notwithstanding its tortuous procedural history, the factual background of this proceeding is highly relevant to the issues on appeal. The record demonstrates that pursuant to the Water Supply Act of 1905 (L 1905, ch 724), the relevant portions of which presently are set forth in Administrative Code of the City of New York § 24-360, the City of New York is required to furnish quantities of water to various municipalities or water districts in a number of counties north of the City in which

City watershed areas and water supply facilities are located (Administrative Code § 24-360 [a]). On or about August 5, 1991, the Water Board petitioned the New York State Department of Environmental Conservation (hereinafter the DEC) "to fix fair and reasonable water supply rates and charges for all the municipalities and water districts other than New York City receiving water from the City's water supply system". The existing water rates had not been changed since 1973 and had failed to keep pace with increasing costs. The DEC subsequently returned the petition, advising the Water Board that under the terms of the Administrative Code and the Public Authorities Law, "the responsibility for establishing water rates to all users of the City water supply system lies first with the [Water] Board [and] [i]f any user outside the City objects to a determination of the Board establishing water rates pursuant to [Public Authorities Law] § 1045-j, that user has the option of petitioning the DEC for a determination pursuant to the Administrative Code". The Water Board thereafter gave notice to all interested parties and conducted public hearings on the rate increase issue. On April 2, 1992, the Water Board adopted a resolution increasing the water rates in two installments to take effect on July 1, 1992 and July 1, 1993, respectively.

In a letter dated June 8, 1992, the County of Westchester advised the DEC that it could not come to an agreement with the Water Board on the rates to be charged, and petitioned the DEC to fix fair and equitable rates. The DEC held hearings on the matter, at which both the County of Westchester and the Village of Scarsdale appeared and argued, *inter alia,* that (1) the Water Board's unilateral imposition of the rate increase was illegal, and (2) the DEC was required to calculate the quantity of "excess" water (i.e., the amount of water above the "entitlement" quantity furnished to the municipalities pursuant to Administrative Code § 24-360 [e]) consumed by the upstate communities and fix the rates therefor. In an "ISSUES RULING" dated August 9, 1993, a DEC Administrative Law Judge determined, among other things, that the foregoing issues were beyond the scope of the proceeding and thus not appropriate for adjudication. On appeal, the Commissioner of the DEC (hereinafter the Commissioner) issued an interim decision dated November 22, 1993, which essentially upheld the ruling of the Administrative Law Judge with respect to these issues and remitted the matter for further proceedings regarding the fixing of appropriate water rates.

By notice of petition and petition dated January 20, 1994, the Village of Scarsdale commenced this hybrid CPLR article

78 proceeding in the Supreme Court, Westchester County, seeking, *inter alia,* to review the Commissioner's interim decision and to remit the matter to the DEC for a determination of the proper methodology for calculating entitlement and excess water consumption and a determination that the Water Board's imposition of the challenged rate increase was unlawful. The petition alternatively requested a declaratory judgment by the court with regard to these issues. The Water Board served an answer to the petition raising various affirmative defenses, including expiration of the applicable Statute of Limitations. However, in a letter dated April 5, 1994, counsel for the Village of Scarsdale advised the court that the Village and the DEC had entered into a stipulation and proposed order on consent wherein the DEC agreed to reconsider the question of whether the scope of the administrative proceeding should be expanded to include a determination of the proper methodology for calculating the amount of water to which upstate communities are entitled under Administrative Code § 24-360. The Water Board opposed the proposed stipulation. The DEC thereupon moved to dismiss the proceeding insofar as asserted against it on the ground that the Commissioner's interim decision was not a final agency determination subject to review. Over the Water Board's opposition, by judgment dated July 1, 1994, the court granted the DEC's motion, finding that the proceeding was premature because the Commissioner was "essentially recalling the decision and opening up a fact intensive re-evaluation of the issues underlying this proceeding". The Village subsequently moved to renew the DEC's motion to dismiss or vacate the judgment of dismissal to the extent of reinstating its claim regarding the alleged illegality of the Water Board's implementation of a rate increase. Meanwhile, it appears that the Commissioner issued a second interim decision on December 14, 1994, in which he determined that the scope of the administrative hearing should not be expanded to address the consumption issues.

In an order dated January 31, 1995, the court vacated its previous judgment dismissing the proceeding as premature and reinstated the petition to the extent it sought declaratory relief with regard to the propriety of the Water Board's rate-setting activity. In an order dated May 4, 1995, the court granted the unopposed motion of the County of Westchester for leave to intervene as a petitioner in the proceeding. In its subsequent petition, the County essentially contended that the Water Board's imposition of the rate increase without the prior

consent of the upstate communities or the approval of the DEC was unauthorized and violative of Administrative Code § 24-360. The Water Board served an answer asserting, *inter alia,* the affirmative defense of expiration of the applicable limitations period.

While the case was still pending in the Supreme Court, the submission of evidence to the DEC in the administrative rate-setting proceeding was completed and the Administrative Law Judge recommended a modest retroactive reduction in the rate increases imposed by the Water Board effective July 1, 1992 and July 1, 1993. In a determination dated November 9, 1995, the Commissioner adopted the Administrative Law Judge's recommendation and directed that the rate increases be retroactively reduced. The Water Board commenced a CPLR article 78 proceeding in the Appellate Division, Third Department, to review that determination.

In a judgment entered December 1, 1995, the Supreme Court, Westchester County, rejected the Water Board's contention that the proceeding was untimely *(Village of Scarsdale v Jorling,* 168 Misc 2d 1). The court further found that the DEC was the proper party to fix rates for entitlement water under Administrative Code § 24-360 and thus declared that the Water Board's imposition of the July 1, 1992 rate increase was unlawful. The court also determined that the DEC had implied authority under the Administrative Code to assess "the reasonableness of the methodology in determining the quantity of water consumed" and "to resolve any dispute as to the method of calculating water use" *(Village of Scarsdale v Jorling, supra,* at 9). As for the consumption of water beyond the entitlement amount, the court found that the DEC had the authority to calculate both the amounts of excess water which the upstate communities could take and the rates which the Water Board could charge therefor, provided that a permit application to take excess water was first submitted to the DEC. No such application had been made in this case. Accordingly, the court directed the DEC (1) to fix fair and reasonable rates for entitlement water as of July 1, 1992 (a matter which the court acknowledged had already been resolved by the Commissioner's retroactive rate reduction of November 9, 1995), (2) to resolve any disputes as to the methods of calculating water usage, retroactive to July 1, 1992, and (3) upon receipt of a permit application to take excess water, to resolve any dispute with regard to the rates charged for such water retroactive to July 1, 1992 *(Village of Scarsdale v Jorling, supra,* at 10). The Water Board has appealed from the judgment.

For the reasons which follow, we conclude that the court improperly declared the Water Board's imposition of the rate increase to be unlawful and erred in determining that the DEC should resolve disputes involving the methodology for calculating the amount of entitlement water to be provided to the subject communities.

## II

■ At the outset of our analysis, we note in brief our agreement with the Supreme Court's rejection of the Water Board's contention that this proceeding is time barred. While the Water Board claims that the challenge to its unilateral imposition of the rate increase accrued on July 1, 1992, when the first phase of the increase went into effect, we find that the Supreme Court properly measured the commencement of the limitations period from November 22, 1993, the date upon which the Commissioner declined to review the propriety of the unilateral rate increase. Inasmuch as the Village of Scarsdale commenced this CPLR article 78 proceeding challenging that determination on or about January 20, 1994, the proceeding was timely under CPLR 217. Indeed, had the upstate communities commenced a CPLR article 78 proceeding challenging the propriety of the rate increase immediately following its imposition on July 1, 1992, the Water Board undoubtedly would have argued that they failed to exhaust their administrative remedies by neglecting to first pursue redress from the DEC pursuant to the provisions of Administrative Code § 24-360 (a procedure which the Water Board has implicitly acknowledged is appropriate by its own conduct in this matter). Accordingly, the Water Board may not now take the position that the petitioners, by seeking administrative review of the issue by the DEC, have allowed the applicable limitations period to expire.

■ Turning to the merits, we previously have observed that "[w]hen the [C]ity [of New York] long ago acquired rights to take water from up-State sources, it did so on condition that it would permit the municipalities along its aqueduct route to be supplied also" *(Incorporated Vil. of Cornwall v Environmental Protection Admin.,* 45 AD2d 297, 301). To this end, Administrative Code § 24-360, as the most recent incarnation of the Water Supply Act of 1905, provides in relevant part as follows:

"a. It shall be lawful for any of the municipal corporations or water districts in the counties of Ulster, Greene, Delaware, Schoharie, Sullivan, Orange, Westchester and Putnam, and for the village of Deposit in the counties of Delaware and Broome,

to take and receive from any of the reservoirs, aqueducts, conduits, streams or pipes of the city a supply of water for the uses and purposes of such municipal corporations or water districts or village * * *

"d. Any such municipal corporation or water district desiring to take and receive water under the provisions of this section shall make application to the commissioner of [the New York City department of] environmental protection in writing, showing the place and manner in which it is proposed to make such connections. Such commissioner shall have exclusive jurisdiction in the premises, to the exclusion of any other board, officer, bureau or department of the state or any subdivision thereof. It shall be the duty of the commissioner to grant a permit or authorization for such connections, under reasonable rules and regulations, including the installation of proper meters or other devices for ascertaining the quantity of water thus taken."

The instant dispute between the Water Board and the upstate entities centers on the rates charged for the water and the calculation of the amount of water which may be taken.

With respect to the rates charged, it is clear that the obligation to initially set and impose the water rates for all users of the New York City water supply falls upon the Water Board pursuant to its broad authority to set rates under Public Authorities Law § 1045-j, enacted in 1984. Indeed, the Appellate Division, First Department, recently commented upon that authority in *Giuliani v Hevesi* (228 AD2d 348, 350, *affd* 90 NY2d 27): "Public Authorities Law § 1045-j(1) requires the Water Board to set and, if necessary, to revise rates, paid by rate payers, commensurate with the cost of the system, as well as to satisfy the amounts necessary to service the outstanding debt resulting from bond issues. While the majority of those persons and businesses who use the water system are City residents, many are not, and reside in Westchester County and elsewhere." The DEC also has construed Public Authorities Law § 1045-j (1) as authorizing the Water Board to initially fix the water rates for upstate users, as evidenced by its response to the Water Board's August 5, 1991 petition requesting that the DEC fix the rate. However, subdivisions (5) and (9) of Public Authorities Law § 1045-j expressly recognize the continuing applicability of Administrative Code § 24-360 in governing the treatment of upstate users of the New York City water supply system. With regard to the question of rates, Administrative Code § 24-360 (b) and (c) provide in relevant part as follows:

"b. [The upstate municipalities or water districts] shall pay to the city such fair and reasonable water charges or rates *as may be agreed upon between the commissioner of [the New York City department of] environmental protection and the authorities of such municipal corporations or water districts or as from time to time upon the application of either party shall be fixed by the New York state department of environmental conservation,* which department is hereby given power to fix such fair and reasonable charges or rates after hearing all parties interested * * *

"c. Such charges or rates shall not, however, exceed the charges or rates now charged by the city to persons using water in that city. Such fair and reasonable charges or rates shall be determined on the basis of the actual total cost of the water to the city after deducting from the total cost all construction costs and expenses of operation, maintenance and carrying charges incurred within the corporate limits of the city in connection with the distribution and delivery of the water within such limits. Such charges or rates fixed by the New York state department of environmental conservation shall be subject to review by the supreme court." (Emphasis supplied.)

Contrary to the contention of the Village and the County, and the determination of the Supreme Court, we discern no conflict between Public Authorities Law § 1045-j and Administrative Code § 24-360, nor do we find anything in the latter legislation which precludes the Water Board from initially setting the rates applicable to upstate users. Rather, the two enactments apply to different situations and may be harmoniously interpreted. Public Authorities Law § 1045-j (1) vests the authority to set rates for all users of the City system in the Water Board. However, while the rates set thereunder for users within the City may be final, Public Authorities Law § 1045-j (5) and (9) provide that the rates set for upstate users will be subject to the provisions of Administrative Code § 24-360, which establish the method for fixing the final rates with regard to those users. As set forth above, subdivisions (b) and (c) of Administrative Code § 24-360 in turn require that if the rates are not agreed upon, the DEC may then fix them upon request in accordance with the stated criteria and subject to review by the Supreme Court. Indeed, this was precisely the procedure envisioned by the DEC and followed by the parties in this case—the Water Board initially set the rates pursuant

to the procedural requirements of Public Authorities Law § 1045-j as of July 1, 1992, the Village and the County disagreed and petitioned the DEC to fix the rates pursuant to the Administrative Code, and the DEC heard evidence on the matter and set new rates retroactive to July 1, 1992, which currently are the subject of review in a separate CPLR article 78 proceeding. Therefore, the Supreme Court erred in declaring the actions of the Water Board unlawful, and we declare that the Water Board's initial imposition of the rate increase was in accordance with applicable laws and was not violative of Administrative Code § 24-360.

## III

■ The parties further disagree over the calculation of the amount of entitlement and excess water which the City must provide. The distinction is important, since, as might logically be anticipated, the rates set by the Water Board for excess water consumption are significantly higher than the rates for entitlement water. The Water Board contends that it is obligated to calculate the entitlement amount, and that the resulting calculation is reviewable only via a CPLR article 78 proceeding in Supreme Court. The Village and the County argue, and the Supreme Court found, that the DEC has the authority to perform the calculation, and that the upstate communities may adduce evidence before it to establish the appropriate methodology for setting the entitlement amount. We conclude that the position of the Water Board is correct.

The fixing of the entitlement amount is expressly addressed in Administrative Code s 24-360 (e) as follows: "e. The daily quantity of water which may be taken and received by any municipal corporation or water district under the provisions of this section shall not exceed the quantity calculated by multiplying the number of its inhabitants as shown by the last preceding census of the United States or the last state or official municipal census by the daily per capita consumption in the city of New York." Nothing in Administrative Code § 24-360 gives the DEC either original or appellate jurisdiction over the calculation of this entitlement amount. Rather, it is the Water Board which determines the entitlement amount by utilizing its own records regarding per capita usage within the City. Moreover, contrary to the assertions of the Village and the County, the methodology for calculating that amount cannot be varied from the clear formula set forth in Administrative Code § 24-360 (e) above. It appears from the record that

the Water Board has properly calculated the entitlement amount for each of the upstate municipalities by multiplying their populations by the per capita consumption within the City. The usage of water in any municipality in excess of the amount so calculated for it constitutes excess consumption for which the Water Board may validly set higher rates. Indeed, the Water Board currently charges the in-City metered rate to upstate customers who consume water in excess of the daily per capita allowance, thereby encouraging water conservation.

The Village nevertheless contends that it should be entitled to employ a methodology for the calculation of entitlement (and perforce, excess) water which is more favorable to it by utilizing a per capita consumption figure based on annual water consumption for the entire Westchester County Water District No. 1 (which includes the Village and several other upstate municipalities), rather than the monthly consumption for each of the individual municipalities. Aside from the fact that Administrative Code § 24-360 does not authorize such a methodology, the Village is precluded from advocating such a position by reason of a 1965 operating agreement between the water district and the City. Pursuant to the terms of that agreement, the Village and the other municipalities comprising the water district agreed in part as follows: "The daily quantity of water which may be taken, received and consumed *by each municipal corporation* through [the Bronx River Pipe Line] operated and maintained by the Water District, together with the quantities of water taken, received and consumed *by each such municipal corporation* through any and all other connections to the water supply system of the City of New York, *shall not exceed the quantity of water which each such municipal corporation may take, receive and consume under the provisions of [Administrative Code § 24-360 (e)]"* (emphasis supplied). The foregoing contractual language demonstrates that the calculation of entitlement/excess water consumption is to be performed by the Water Board with respect to each municipality rather than Westchester County Water District No. 1 as a whole. Accordingly, the contention of the Village to the contrary is incorrect.

Notwithstanding the Water Board's broad authority to calculate the entitlement consumption figure for each municipality and to initially set the rates for both entitlement and excess water, the DEC does possess ultimate control over excess consumption and the rates charged therefor in the exercise of its function to protect and to preserve the water resources of

the entire State *(see generally,* ECL art 15). Since Administrative Code § 24-360 is silent with regard to the subject of excess water consumption, the taking of excess water by the upstate municipalities is not expressly authorized. Indeed, as correctly noted by the Supreme Court, the only authority for such excess consumption is by application to the DEC pursuant to ECL 15-1501 (1) (a) for a permit "[t]o acquire or take * * * an additional water supply from an existing approved source". Upon the submission of such a permit application by an upstate municipality, the DEC would be required to accept the Water Board's calculations of that municipality's entitlement and excess (if any) consumption, and could issue a permit authorizing the excess consumption. Moreover, pursuant to its general jurisdiction over matters involving conservation and the protection and preservation of the potable water supply for all users, the DEC may attach appropriate conditions (e.g., a limit on the amount of excess water which may be taken) to the issuance of the permit *(see,* ECL 15-1503 [4]). Similarly, while the Water Board initially establishes the rates charged for excess consumption, the DEC has the implied authority under Administrative Code § 24-360 and the Environmental Conservation Law to set the final rates for any such excess consumption which it approves as part of the permit process. Accordingly, we agree with the Supreme Court to the extent it determined that the DEC has the authority to entertain permit applications for excess water consumption by the upstate municipalities and to resolve disputes with regard to the rates charged for that water.

## IV

In accordance with the foregoing discussion, we modify the judgment of the Supreme Court to delete the provision thereof which authorizes and directs the DEC to resolve any disputes regarding the methods for calculating entitlement and excess water consumption, as those calculations are the exclusive province of the Water Board pursuant to Administrative Code § 24-360 (e), subject to judicial review, and we further declare that the Water Board's initial, unilateral imposition of water rates for both entitlement and excess water was lawful, subject to review and the imposition of new rates by the DEC upon an appropriate application pursuant to Administrative Code § 24-360 (b) to fix rates for entitlement water, or pursuant to ECL 15-1501 (1) (a) for a permit to take additional water.

ROSENBLATT, J. P., COPERTINO and JOY, JJ., concur.

Ordered that the judgment is modified, on the law, by (1) deleting therefrom the provision declaring unlawful the unilateral imposition by the New York City Water Board of increased water rates as of July 1, 1992, for certain municipalities outside the City of New York, and substituting therefor a provision declaring the unilateral imposition of those rates to be lawful, subject to the review mechanism set forth in Administrative Code § 24-360, and (2) deleting therefrom the provision authorizing and directing the New York State Department of Environmental Conservation to resolve any disputes regarding the methods for calculating water consumption; as so modified, the judgment is affirmed insofar as appealed from, with costs to the appellant payable by the Village of Scarsdale and the County of Westchester.